NOTICE
Decision filed 07/07/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240872-U

NO. 5-24-0872

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 21-CM-483 |
| | ) | |
| GARY W. JOHNSON, | ) | Honorable |
| | ) | Mark S. Goodwin, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HACKETT delivered the judgment of the court.
Justices Boie and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the defendant's conviction where the trial court did not err in denying his motion to dismiss, and we decline to remand for further sentencing proceedings on the remaining counts where we do not possess the requisite authority to do so.

¶ 2    Following a jury trial, the defendant, Gary W. Johnson, was convicted of two counts of phone harassment (720 ILCS 5/26.5-2(a)(2) (West 2020)) and two counts of disorderly conduct (720 ILCS 5/26-1(a)(1) (West 2022)) and sentenced to 18 months' probation and a suspended 90-day prison term. On appeal, the defendant argues that this court must reverse his conviction for phone harassment (count I) where the trial court erred in denying his motion to dismiss that count as the defendant alleged that the charge was filed beyond the statute of limitations. For the following reasons, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4     On August 13, 2021, the State charged the defendant via information with two counts of

phone harassment based on voicemail messages sent to two of his assigned Veterans Affairs (VA)

social workers. Count I read as follows:

> "COUNT I – PHONE HARASSMENT (CLASS B MISDEMEANOR) in that said
> defendant, on or about the 27TH day of May, 2021, made a telephone call, whether or not
> conversation ensues, with the intent to abuse, threaten, or harass any person at the called
> number, by leaving a voicemail on Victoria Dunavan's phone *stating he wanted to eat her
> f\*\*\* c\*\*\**, in violation of 720 ILCS 5/26.5-2(a)(2), and against the peace and dignity of
> the same people of the State of Illinois." (Emphasis added.)

¶ 5     On March 6, 2024, approximately two years and seven months after the filing of the

original information, the State filed an amended information altering the wording of the first count

of phone harassment and adding two new counts of disorderly conduct. The amended count I read

as follows:

> "COUNT I – PHONE HARASSMENT – (CLASS B MISDEMEANOR) in that said
> defendant, on or about the 27TH day of May, 2021, made a telephone call, whether or not
> conversation ensues, with the intent to abuse, threaten, or harass any person called at the
> number, by leaving a voicemail on Victoria Dunavan's phone *stating that he wanted to 'eat
> c\*\*\*'* in violation of 720 ILCS 5/26.5-2(a)(2), and against the peace and dignity of the
> same people of the State of Illinois." (Emphasis added.)

¶ 6     On March 14, 2024, the defendant filed a motion for a bill of particulars regarding the two

newly added counts of disorderly conduct (counts III and IV), requesting, among other

information, the specific voicemails that the disorderly conduct charges were based on. The

defendant never filed a similar motion requesting the specific voicemails that were the basis for

the phone harassment charges.

¶ 7     On April 16, 2024, the defendant filed a motion to dismiss the amended first count of phone

harassment and both counts of disorderly conduct, arguing that all three counts were improperly

brought outside the statute of limitations. Regarding count I, the phone harassment charge, the

2

defendant argued that "Count I of the Amended Information *may* now reference an entirely different message than the original Count I[,] which *** appears to be derived from the message identified as number 2647." (Emphasis added.) The defendant noted that message number 2647 was the only message that specifically used "the words 'eat' in proximity with 'f*** c***.' " The defendant admitted that message 2647 also included "the phrase 'eat *a* c***.' " (Emphasis in original.) However, the defendant insisted that, because the amended count I referenced the phrase " 'eat c***' without the article between," the amended count I was based on message number 1254, an entirely different message in which the exact phrase "eat c***" was used. The defendant argued that, since the State's amended count I was based on an entirely different message than the one that the original count I had been based on, the amended count I functioned as an altogether new charge improperly brought outside the statute of limitations, and it should be dismissed.

¶ 8    In its April 24, 2024, response to the defendant's motion to dismiss, the State argued that the filing of the original information tolled the statute of limitations regarding the conduct upon which the original charges were based, citing section 3-7 of the Criminal Code of 2012 (720 ILCS 5/3-7 (West 2022)), which states, in relevant part:

>    "(a) The period within which a prosecution must be commenced does not include any period in which:
>           (1) the defendant is not usually and publicly resident within this State; or
>           (2) the defendant is a public officer and the offense charged is theft of public funds while in public office; or
>           (3) *a prosecution is pending against the defendant for the same conduct, even if the indictment or information which commences the prosecution is quashed or the proceedings thereon are set aside, or are reversed on appeal*[.]" (Emphasis added.)

The State insisted that the amended information alleged the same series of incidents at issue in the original information, and that the section 3-7 exception to the statute of limitations applied to the amended and added charges because those charges stemmed from the same criminal transaction

that gave rise to the original counts in the information. The State did not specifically address the defendant's argument on count I or identify which individual voicemail messages were the basis for the original and amended versions of count I.

¶ 9    At a hearing on May 1, 2024, the trial court denied the defendant's motion to dismiss, commenting that the law allowed the State to submit amended charges during the defendant's ongoing prosecution. Also at this hearing, the State opined that to say that each phone call was a separate incident was "a bit incredulous," and that the calls were all "one sort of scope of conduct" establishing "a pattern of [the defendant] speaking sexually to Ms. Dunavan." Defense counsel denied that the calls constituted a continuing narrative of events and insisted that they were all separate acts, which were separate in time, place, and reason. Defense counsel also complained that she could not tell from the new information which individual voicemail each count was based on. The court stated its belief that the calls were all part of a continuing narrative.

¶ 10    The defendant's jury trial took place on June 20, 2024. Before trial, defense counsel renewed her objection to the trial court's denial of the defendant's motion to dismiss. The court acknowledged counsel's objection before proceeding.

¶ 11    At trial, Victoria Dunavan testified that she was a social worker at the VA and mainly helped homeless veterans. In 2021, she was the defendant's assigned social worker. At some point, the defendant became infatuated with Dunavan. He left her voicemail messages that were "disgustingly sexual" in nature and made Dunavan "sick to [her] stomach." Dunavan received more than 20 such voicemail messages. These messages were left at all times of the day, but mostly in the middle of the night. She recorded the messages and gave them to the Veterans Affairs police.

¶ 12    All the messages were played for the jury. The two messages relevant to this appeal, message numbers 2647 and 1254, are set forth below. The audio suggests that the defendant was

4

inebriated during each of these calls. Message number 2647 was 1 minute and 39 seconds long and proceeded as follows:

> "Maybe I'm having a men—mental health emergency, but maybe I'm not. That's all I'm saying. Whatever. F*** outta here. Yeah, get the f*** outta here, you know. What can I do? Eating c***. I want to eat a c***. Eat a f*** c***. F*** suck your c***. Just been it's so long."

Message number 1254 was 37 seconds long and proceeded as follows:

> "Me already hurt him, me already hurt it real bad. And I hate that we want, this is what we have left. Me want c***. Me want c*** real bad. Me want eat c***, me wanna eat butt, and me wanna eat c***, and wanna f*** c***. Other than that, we good. Ugh, already got him. You got him, like a motherf***."

¶ 13    The State presented other witnesses whose testimonies are not recounted here because they are irrelevant to this appeal. After the State rested, defense counsel renewed the defendant's motion to dismiss the first, third, and fourth counts. The trial court denied the motion, and the defense rested without presenting any evidence. After a brief deliberation, the jury found the defendant guilty on all four counts.

¶ 14    At the sentencing hearing on June 26, 2024, the trial court confirmed that the defendant had been found guilty of all four counts in the State's amended information. The State made the following sentencing recommendation to the trial court:

> "So, in conclusion, Your Honor, the State's recommendation would be for a $300 fine plus court costs, 18 months of probation, any treatment recommended by probation, and no contact with Miss Dunavan."

The State did not specify which specific count this recommendation applied to and provided no further sentencing recommendations during the hearing. After hearing argument and the defendant's statement in allocution, the trial court sentenced the defendant as follows:

> "I'm going to go with the State's recommendation with a small twist. [The defendant] is going to be assessed a $300 fine plus the court costs. He's going to be placed on 18 months of probation. It will be ordered as a part of that probation with standard terms and conditions to apply. He's not to violate any laws of this or any other jurisdiction. He's to

5

have no contact with Miss Dunavan ***. He's to follow all treatment recommendations made by the Probation Office. I'm going to sentence him to 90 days in jail. I will suspend that sentence at the current time pending compliance with his terms of probation."

Thus, the trial court sentenced the defendant pursuant to the State's recommendation but added a suspended 90-day jail term. The trial court did not specify for which specific count, or counts, the defendant was being sentenced. Neither the State nor the defendant asked for clarification on the trial court's sentencing pronouncement.

¶ 15 The following day, the trial court filed a written sentencing order confirming the court's oral pronouncement and identifying the "Nature of Offense" as "Phone Harassment 720 ILCS 5/26.5-2(a)(2)." The written order did not specify for which of the two counts of phone harassment the defendant was being sentenced. The case's docket sheet, however, identified the sentence as applying to count I. Regarding the other three counts, the docket sheet simply stated that the defendant was dispositioned and sentenced on June 27, 2024, which was the date of the court's written sentencing order. A financial sentencing order entered by the trial court also references count I. At no point during the remainder of the posttrial proceedings did either party raise any objection or ask for any clarification regarding the trial court's sentencing order.

¶ 16 On June 28, 2024, the defendant filed a motion for a new trial, alleging, *inter alia*, that the trial court erred in denying the defendant's motion to dismiss the first, third, and fourth charges in the State's amended information because those charges were improperly brought outside of the statute of limitations. At the hearing on the motion on July 26, 2024, the trial court denied the defendant's motion for a new trial without addressing the merits of the statute of limitations issue. The defendant appealed to this court solely regarding his conviction on count I.

¶ 17 On August 11, 2025, the State filed a motion in this court for remand for clarification of the trial court's sentencing order and complete sentencing. The State argued that, as the trial court

had not clarified which count the defendant had been sentenced on, no final sentencing order had been filed in the trial court, and this court had no jurisdiction to hear the defendant's appeal. In his response, the defendant posited that, "[w]hether or not the trial court erred in failing to sentence [the defendant] on the remaining counts, a final judgment for Count I was entered, and this [c]ourt has jurisdiction to hear [the defendant's] appeal regarding that specific count." On August 21, 2025, this court denied the State's motion to remand, ruling that, because the trial court's orally announced sentence did not conflict with the case's docket sheet, which specified that the sentence applied to count I, a final order regarding that count had been entered in the trial court, and this court did therefore have jurisdiction over the defendant's appeal on count I.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, the defendant argues that this court must reverse his conviction for count I of phone harassment where the trial court erred in denying his motion to dismiss that count. We review *de novo* the trial court's decision not to dismiss count I. See *People v. Casas*, 2017 IL 120797, ¶ 17.

¶ 20    Here, both the State and the defendant agree that count I of the State's original information was based on voicemail number 2647 and was properly brought within the statute of limitations. However, the parties disagree on whether count I of the State's amended information was similarly based on voicemail number 2647, and on whether that count was properly brought within the statute of limitations. The defendant contends that, because the amended count I referenced the exact phrase "eat c***," it could not have been based on voicemail number 2647, since that voicemail's wording did not include the exact phrase "eat c***." Instead, the defendant argues, the amended count I was based on an entirely different, previously uncharged voicemail, voicemail number 1254, in which the exact phrase "eat c***" *was* used. The State denies this and maintains

7

that both the original count I and the amended count I were based on voicemail number 2647. The State explains the alteration of the wording of count I in the amended information as simply the correction of a "formal defect," although it does not identify the defect. The State admits that, if the voicemails the original count I and the amended count I were based on differed, the State would have been required to plead an exception to the statute of limitations regarding count I in the amended information. However, the State maintains that, since the voicemails did not differ, no such exception was required.

¶ 21    We do not find the defendant's argument convincing. While it is true that voicemail number 2647 does not include the exact phrase "eat c***," it also does not include the exact phrasing referenced in the original count I, which both parties agree was based on 2647. The original count I accuses the defendant of "leaving a voicemail on Victoria Dunavan's phone stating he wanted to eat her f*** c***." In 2647, however, the defendant never directly states that he wants to "eat Dunavan's f*** c***"; instead, he only states that he wants to "eat *a* f*** c***" or "eat a c***." Although "an appellant has the burden of persuasion on appeal," the defendant offers no other evidence for his claim that the State's amended count I was not based on voicemail number 2647 other than the slight inexact wording used in amended count I. See *Yamnitz v. William J. Diestelhorst Co.*, 251 Ill. App. 3d 244, 250 (1993); see also *People v. Kirkpatrick*, 240 Ill. App. 3d 401, 406 (1992). The general wording of 2647 is similar enough to the wording of the amended count I, as it was to the wording of the original count I, for us to believe the State's explanation that the count was amended simply to correct a defect. For this reason, we find that the amended count I was not improperly brought outside of the statute of limitations, and the trial court did not err in denying the defendant's motion to dismiss count I from the State's amended information.

8

¶ 22   Although this court determined that it has jurisdiction over the defendant's limited appeal on count I, we must also determine jurisdiction on the remaining counts. Jurisdiction is granted to the appellate court, pursuant to article VI, section 6 of the Illinois Constitution, over final judgments of the circuit court. Ill. Const. 1970, art. VI, § 6. In criminal cases, a judgment is not final until the trial court imposes a sentence. *People v. Caballero*, 102 Ill. 2d 23, 51 (1984) (citing *People v. Dixon*, 91 Ill. 2d 346, 352 (1982)). Additionally, Illinois courts have held that jurisdiction is only conferred on courts of review regarding judgments the appellant has specifically appealed. See *People v. Smith*, 228 Ill. 2d 95, 104 (2008); also see *People v. Olaska*, 2017 IL App (2d) 150567, ¶ 115.

¶ 23   In this case, neither the defendant nor the State has appealed regarding the remaining counts, and it appears that no final sentencing orders were entered in the trial court upon those counts. Despite this, in its appellee brief, the State asks this court to remand counts II, III, and IV to the trial court for further sentencing proceedings, arguing that the trial court should either sentence the defendant on the remaining counts or clarify why the defendant was not sentenced on those counts. As "[a] reviewing court has an independent duty to consider issues of jurisdiction, regardless of whether either party has raised them," we consider here whether we have the jurisdiction to do as the State requests. *Smith*, 228 Ill. 2d at 104.

¶ 24   In support of its claim that this court possesses jurisdiction to remand the remaining counts, the State points to *People v. Relerford*, in which our supreme court stated that, "to the extent the appellate court [has] any jurisdiction to address the nonfinal convictions, that jurisdiction [is] limited to ordering a remand for imposition of sentences on the lesser convictions." *Relerford*, 2017 IL 121094, ¶ 75. In *Relerford*, the defendant asserted claims on appeal regarding unsentenced convictions, relying upon an earlier supreme court case, *People v. Dixon*, 91 Ill. 2d 346 (1982), for

9

support. In *Dixon*, our supreme court determined that the appellate court had jurisdiction to remand unsentenced counts to the circuit court for sentencing where "the circuit court determined, albeit incorrectly, that sentences could not be imposed on the lesser offenses because they merged into the other offenses" upon which sentences were imposed. *Relerford*, 2017 IL 121094, ¶ 74. The *Relerford* court expressly characterized the situation in *Dixon* as "anomalous," and stated that, in its view, "the decision in *Dixon* must be understood to be limited to the type of factual situation presented in that case." *Id.* Indeed, the *Dixon* court itself characterized the situation before it as "anomalous" where "the failure to impose sentences upon" the unsentenced convictions was "dependent upon" the circuit court's handling of the sentenced convictions. *Dixon*, 91 Ill. 2d at 353. In *Relerford*, where there was "no such explanation for the circuit court's failure to impose sentences on" the unsentenced counts, our supreme court determined that the appellate court lacked jurisdiction to address the unsentenced convictions. *Relerford*, 2017 IL 121094, ¶ 74.

¶ 25    Here, like the *Relerford* court, we do not have any explanation as to why the trial court failed to sentence the defendant on counts II, III, and IV. Without such an explanation, we cannot conclude that the trial court's failure to impose sentences on those counts was "dependent upon" its handling of count I. Additionally, although this discrepancy might "have been cured if brought to the trial court's attention," nowhere in the record is it shown that the State ever mentioned its concerns to the trial court before requesting remand in this court. *Caballero*, 102 Ill. 2d at 51. We suggest that, if possible, the State bring this matter to the trial court's attention to attempt to clarify or remedy the unsentenced nature of the remaining counts. Until the trial court has had the opportunity to further review and make its own corrections, we decline to address the issue further here.

¶ 26                                    III. CONCLUSION

¶ 27     We affirm the defendant's conviction and sentence where the trial court did not err in denying the defendant's motion to dismiss; and we decline to remand the defendant's unsentenced convictions to the trial court for further sentencing proceedings where we do not find jurisdictional authority to do so.


¶ 28     Affirmed.